May it please the court, good morning your honors. My name is Mick McFarland and I represent appellants Roberta Kramer, Juanita Murray, and Riverside School District. And with your honor's permission I'd like to reserve five minutes. The issue in a nutshell that we're asking you to look at today is whether Roberta Kramer, the former superintendent of Riverside School District, and Juanita Murray, the principal of Chattaroi Elementary School are entitled to qualified immunity. So if there are say disputed factual issues do we have jurisdiction to read to review the qualified immunity issue? You do your honor and I would specifically refer to I believe it was Judge Fletcher's fairly recent case of Pollack v. Savage which noted that the has repeatedly stated that a court of appeals has jurisdiction to hear an appeal of a denial of qualified immunity notwithstanding the district court having found disputed facts. And to quote that case because I believe the position that I'm advocating here is identical to the position the defendants had in that case. Well so let's just assume that the plaintiffs allegations that the nothing policy are true. So I think we have to assume that for purposes of this correct? I do not believe so. I believe that. Well I think for you to win we can't resolve those factual disputes so just assume that and then look at the evidence and look at whether there's affirmative conduct or deliberate indifference assuming those to be true. Don't we have to assume those to be true here? With due respect your honor I don't believe there is evidence in the record there are not facts that support the allegation that there was a do not okay but the facts that she alleges about how it came down and when they did and when they what how the reporting went about we have to assume those in favor of plaintiff appellee right? And I have to come back your honor to making a point about what the allegations are and what the underlying testimony is because the underlying testimony was uniform that there is not there was not a policy or practice of discouraging CPS reporting. Counsel that's not that's belied by the record it's not uniform. With all due respect your honor I believe that the only indication that there was any sort of policy of discouragement is in the declaration of Tiffany Zuck. It doesn't sound uniform. Where it gets uniform your honor is the testimony the deposition testimony of Ms. Zuck when I questioned her about the statements in her declaration. I appreciate that and I've to me is serious cross-examination at trial but you are asking us to do I think exactly this is Judge Callahan's point exactly what we don't do an interlocutory review. Sure and I don't I don't believe I am your honor. Why not? Please help me with that because I am having a hard time with your argument. Because I'm not I'm not asking to weigh the credibility of a witness. Ms. Zuck retracted her statements in her declaration and her testimony in the case. I mean I don't I'm not going to cross-examine her at trial because her deposition testimony is favorable to the district because her deposition. It is more favorable counsel but but this this I agree there were declarations and there was a deposition testimony that walks some of it back. There's there's the classroom teacher having made a report she testified she made at least one report to the principal and the principal testified she did not relay that on to the to the state. There's a text message back and forth between Tiffany Zuck and and Ms. Dornquist what I'm sure I'm sure you've read and it's quite inflammatory. I think this was a tragedy for everybody and I don't want to walk people through it. I'm sure they're listening in today but I but you know that record so how can you say it's uniform? I'm very familiar with that record your honor and by way of example what Sherry Dornquist testified to is that she went to Ms. Murray not because she was concerned that GB had been abused by anyone but because he did have some bruising on him and it's her practice to make sure that those are documented in school. And Ms. Murray said she would take care of it and then Ms. Murray testified that she did not report that on and you know in this text message Ms. Dornquist said she felt that it was hyperbole but she said you know they murdered this child. She used she said they I will not testify for the district. I she was she was very upset and and I want to be clear we're not making any findings of fact here but at summary judgment your response to Judge Callahan is that this is you said this was not contradicted about a do-nothing policy and I cannot agree with you. And I appreciate that your honor but. Okay but I guess I feel like you're wasting your time from the standpoint of that there is oh and I'm not saying you're going to win but there is a way that you can win if you assume all of those facts to be true because the state created danger exception which is at issue here and this is a truly tragic situation and if your clients are entitled to qualified immunity it doesn't mean they did everything right it doesn't mean that they could I mean but it's a very high bar and if you assume all of those to be true and as if as a matter of law that is not affirmative conduct or deliberate indifference as a matter of law they're still entitled to qualified immunity not every unfortunately not every it I mean this poor child you know maybe if they had done something but they didn't put the child the child had father was murdered and the mother died and they were put with a relative and you know and all of those things and if I mean if you go back and tell the school district that they couldn't have done any better I don't think that would be very good legal advice but that doesn't mean that they wouldn't that they don't necessarily qualify for qualified immunity so let's drill down and assume that what they did is what they give them the inferences and talk about state-created danger and absolutely your honor and I got this I got sidetracked from answering your question about the do-nothing policy because circling back to your question and the do-nothing policy even if there was as you alluded to a policy of not doing anything they still have not shown miss Davis has still not shown the next step and that is the basically cover-up instead of just not doing something you have to be affirmatively trying to discourage the reporting of the abuse otherwise you do not what Zuck said happened she said your honor that that happened in her declaration she retracted that but now you're back to what we did but now that's what those are the type of things people talk at a trial okay that's what they talk about it at a trial okay they didn't report you know they didn't report it the first day you know whatever the reasons were or whatever deal with it still is a very high standard I agree and that's what you need to talk about you don't need to talk about what a good job they did you need to talk about why assume the worst and why that still isn't why they still get qualified immunity but they still get qualified immunity honor because there are no facts that established that a single teacher at Riverside School District believed that Garrett the GB was being abused and failed to make that report to CPS because they had been discouraged to do so and that kind of ties into the causation element that's missing from this case the causation is going to be a big problem at trial I will grant you that but there are several people here in this record who had concerns about the child showing bruising and scratching and whatnot so the Christmas concert alone I think there are five individuals who testified that they're concerned they saw scratching and whatnot and the consistent pattern when there were reports they went to Zuck which was a consistent with the school policy not the district policy and then when she was taken out of the loop to Murray and then Murray said she never passed any of them on well as it relates to the Christmas concert just to be clear your there was a report made on December report yes and that was exactly right I see my timeline here so there's the bandaging on covering his entire forehead in October correct the bilateral bruising in late November on his ears and arm that's where Murray's it was reported to Murray and Murray said she would take care of it and Murray later testified she didn't report it we can take that as an example of his it's a more you're correct to about that and so what about the let me let me just said there's a problem you want to I think to rule as a matter of law on causation because you said there's no indication that anybody failed to report because of the school policies I believe your point there's no evidence in the record that any teacher thought there was a staff member thought there was potential abuse and made the of discouraging abuse and that has to be shown in order for there to be the state created danger because in the absence of discouraging well it directed the school wide policy says it has to go it's in capital letters as a direction you have to give these these reports to Zuck to the counselor and then to Murray and the policy and practice testified to the policy and practice is testified to is this particular principle was very insistent that she wanted a day or two to work it out with parents and that's what happened especially talk about the practice that there's testimony to that effect so rather than these people are all mandatory reporters rather than complying with the district policy to report immediately so I'll be quiet now and let you respond but that's what I'm struggling with I don't believe there's any evidence in the record your honor none that any teacher staff member considered JB to have been abused or suspected that he was abused now going back to whether this is tragic and whether they did their job as mandatory reporters is a different issue okay what do we do them with these just for example this is a big record so I'm not going to take you through all of it of course but what about this text message between Ms. Dornquist and Tiffany Zuck the classroom teacher who did have concerns and did report them and at least on one occasion it wasn't passed through she reported bilateral bruising on ears and arms her comments here are scathing and those those concerns that she had about the bilateral bruising she did take to Ms. Murray and remember she said she took it to Ms. Murray because Ms. Murray has great rapport with children and she wanted Ms. Murray to go talk with GB to find out about them Ms. Murray testified she did and that GB kept saying his cousin his cousin and so she believed at the time that the bruising was from roughhousing with the cousin but she making a closing argument about how I had evaluate the evidence and I am NOT on the jury understood but but it goes to whether there was this discouraged evidence of discouraging reporting because okay so here's the deal here's the deal and I'm erupting you forgive me but I'm sorry I'm the state we're only talking state created danger we're not talking about special relationship and to get back to judge Callahan's question you have to show an affirmative step taken by the school and then so we're still talking about the affirmative step right correct and why isn't the policy or practice of discouraging reporting an affirmative step can you what's your best answer there my best answer there is there's not evidence of discouragement I'll take this as a hypothetical then given what you just said if there is a policy of practice of discouraging is that state created danger if there is a policy of practice of discouraging abuse and no discouraging reporting is what excuse me discouraging reporting abuse and that policy in this case applied to these facts led a teacher or staff member to not make a report then yes I would agree there would be an issue of state created danger. The question is whether there is enough evidence in the record to go to trial on that point. Absolutely your honor. Thank you. All right from the other side. All right thank you. Good morning your honors. Good morning. If it may please the court my name is James Ware. I'm here today with my co-counsel Mark Kimble. We're here on behalf of Appelli, Ms. Davis. To answer an initial question. Yeah I mean I think we all we all start from the fact that this is a terribly tragic situation and no one ever the school did not put the child there. Okay so it's different than some of our cases where say like they put a child placement happened with a known sexual predator or something and so here it's it's undisputed that the child ended up there by other people. It's not we're not talking about the child welfare or whatever we're so the school didn't put the child there so we have to deal with what the school you know they're not so it's the correct your honor and what I guess what I wanted to start off with and perhaps it's and they couldn't remove the child from there either right all the school can do is report suspected abuse correct your honor and then whatever happens and if they let's just say it would be worse facts for you if they had reported immediately the first time they saw anything in the child that they reported it and then whatever I don't know we call in California Child Protective Services you call it something else here let's say they sat on it for two months and the child that without investigating it or doing a home visit and then the child died then you'd be suing them right correct your honor that's a different fact scenario right our relationship or the relationship of the RSD with this case would be much different I guess I wanted to start out so even reporting it that doesn't that would not result in the child being immediately removed it would have to go to a court process and it would have to be an investigation and then decide what happened correct your honor and in fact I'm in December when are you saying there's no provision in Washington law for a meeting immediately removing a child from harm no no no I mean there's such a Tory's question so you're getting way beyond the Record Council I'm sorry I had there is a provision within Washington statutes that does allow for an immediate removal of a child but not for the school not for the school to do it would be the reporting or the police it depends on if they're contacting correct okay correct your honor so sitting here today the court is going to take as given the facts of the district court assumed when it denied summary judgment simply for a legal reason to determine if there is an abstract issue of law related to that warrants reversal I think that the briefing on this is so heavily skewed towards a factual dispute about the credibility of certain witnesses about why for example miss Dornquist went to Murray twice she went in October of 2014 for bruising on the forehead then she went in November of 2014 because of the bylaw bruising and bruising on arms well the question becomes if she didn't suspect that there was any signs of abuse why was she going to as we alleged the gatekeeper to determine what to do about it the briefing is really unfortunately skewed towards disputed issues of fact but if we could get back to what you have to show because they're entitled to review at summary judgment about the constitutional question for sure correct and your best argument these that there's a showing here sufficient to show that there was a state created danger an affirmative act what's your best shot the affirmative act is very simple that there was there is evidence on the record that there was a policy of using either you can phrase this do nothing or using Murray as a gatekeeper that deviated from mandatory reporting and what that result was is that the staff at CES would not make an independent decision of to report or not all they would do is go to quote-unquote the next person which was Murray that action had it not had that policy not been in place we can presume in the court presumed and it's indicated in the courts decision on the 12b 6 at er 3247 that the staff would have simply followed Washington law on mandatory reporting and reported themselves that the absence of that gatekeeper or the present excuse me the presence of the gatekeeper put him in a worse-off situation than had the policy not actually existed now you're talking about policy are you talking about a policy in the school or are you talking about policy of the district you're talking about both well I'm talking about both your honor what's critical here is is that at CES we have in the handbook a statement there the policy written in the handbook said accepting excuse me can you be clear about district handbook versus school handbook yes I think just felt she was asking about the school policy and how it reporter must report this to see it CES Council and that's at er 1 1113 the district policy says that use a slightly different language where it says that you have to report it to the school counselor and the issue here is is that at CES at the school level that Murray and we argue with the blessing of dr. Kramer went beyond simply what was written in the school handbook and had this informal policy of trying to keep everything in-house right well here's here's what I'm driving at we've got two different categories of defendants we've got the school district and we've got individuals and the school district of course is not entitled to qualified immunity but if we're going to hold the school district liable we've got to find policy custom or practice under Manel we need to find that which is different from what we need to find as against the individuals and I'll use the word policy or custom with respect to the individuals but in a different sense from Manel but if we find that say Murray as lead the leader of the school had a policy or practice of discouraging the complaints going beyond her that may be enough for her so I'm asking you to differentiate when you're talking about policy customer practice as to who's you're talking about yes and so for Murray the she created the it's our position she created the policy at the school district or at the school at CES and that this was written policy we're talking about policy as enacted or effectuated by her actions correct and wait a minute there's a written policy at the school that's what judge Fletcher's asking yes there was the written policy but I guess it's our position that she even goes beyond the strictly written policy this is really an important point okay can you back up and ask answer judge Fletcher's question again because I think the records now the policy at the school deviated from the statute yes it was it says any school personnel who has reasonable cause to believe that a child is suffering injuries suffering physical neglect or sexual abuse all caps must report this to CES counsel first and then the counselor counselor CES counselor meaning the school counselor correct your honor and this is that it's the district court at ER 113 113 and it so excuse me and then the counselor will then report to the Department of Child Protective Services so again this is the written policy and it's our position that that deviates from the statute because the statute places the onerous on the mandatory reporter further it's our position that Murray went beyond this and actually instilled a culture a custom of making sure that things were kept in-house and that there was a strong gatekeeper before anybody reported to CPS and it could have been in the record indicates it was either Murray or the counselor but that the key was is that that these individuals served as the gatekeeper and the record indicates at least on two instances with GB that Murray was serving as the gatekeeper as to whether or not a reporting would occur and again that was with Sherry Dornquist on October 2014 and then in November of 2014 so that's the written policy at the school level and that was instilled by Murray and so she was the policymaker at that level for dr. excuse me for dr. Kramer the issue here is is that she was the she oversaw the district-wide policy she was in constant contact with Murray and that she acquiesced and approved the policies at CES and so for that I believe that under Monell the she was adopting the policies and so under Monell I do believe that attaches liability at the district level well estimate estimate now and the district this is not an interlocutor to appeal as to them right well it is correct and I guess can you rephrase your question your honor because perhaps I've heard enough thank you okay so assuming so she would this woman that was taking care of the child she was acquitted yes she was acquitted the outside of the record but discuss more about kind of the case but what happened was is that at least my understanding of it was is that there was an expert witness who testified on her behalf it was a pediatric neurologist I believe who testified that in theory a child could sustain the injuries to the head by falling off of a essentially if we could judicially notice that but you can't really tell why the prosecutor obviously didn't prove her guilty beyond a reasonable doubt to a second-degree murder you are yes your honor you're correct that either by virtue of accident or another person in the house or it could be she was acquitted and I would point out that in our case that the issue here is doesn't rest solely on who caused the injuries to him well there's no issue that they the school didn't cause the school didn't inflict that they didn't happen at school there's no way that's undisputed right so okay so again I do believe that we have established that the policy was a state-created danger additionally your honors I would argue that as far as deliberate indifference there is enough evidence to survive summary judgment deliberate indifference case law indicates that it's a very facts or case specific issue and also and often rests on whether rests on weighing evidence and therefore whether actions amounts of deliberate indifference or mere negligence tends to be a factor be how bad the injuries looked as to whether it would be deliberate indifference you know let's I mean let's just say that you know you don't report it and you're you've got a gaping hole in your neck or you know something like that I mean that's a better those are better facts for deliberate indifference as a scratch on the hand well and I mean we would have to look at what the undisputed facts are about what the injuries look like correct and what I would state is that the trier fact would look at the pictures and determine the jury would look at the pictures and determine are these mere scratches that look like kids playing or is it something more significant child five yes he was he read somewhere that he had compromised verbal skills is that right he did unfortunately he suffered from severe neglect at an early age so he was developmentally delayed he had never been diagnosed okay and counsel what was taken off and directed no longer work with this child because the foster mother had caused quite a scene and a lot of hollering after she'd been reported to the state was another counselor assigned to look out for this child was there somebody else well he was in a yes or no can you tell me and your time sticking there a counselor assigned no okay and then my other question is was it was a classroom teacher miss Dornquist then notified by miss Murray that this report to to to to DSHS had been made yes I don't recall exactly where in the record but the staff was aware of it as of when and again I don't recall exactly in the record it would have been I believe it was in January of 2015 thank you so your honor because this court does not weigh the facts and the credibility of the testimony on an interlocutory appeal of the denial of qualified immunity I believe that the appellants have not met their burden to show that the district court erred and for that reason I would ask that you affirm the lower courts decision thank you thank you you've saved some time now would you put two minutes on thank you your honor the reason the briefing was so factually intense is because of the errors in the presentation first by plaintiffs to the court as to what the facts were and then the representations or the characterizations by the court the district court as to those facts and you heard one example of it is just now counsel got up and said that miss Dornquist went to miss Murray on two separate occasions about concerns about GB and abuse that's not true the record is that that October 2014 report she went went and told miss Murray he bumped his head on a railing here at school and has a lump on it and so there had to be a focus on the facts and what the actual evidence is now going to your honor's question okay late October 2014 on a field trip Dornquist notified GB had a bandage covering his entire forehead okay then late November 2014 Dornquist noticed bilateral bruising on GB's ears and arms Dornquist contacted Murray about GB's injuries and asked if she should report the incident so and that's the occasion where miss Murray went and talked to GB and then asked the school nurse to examine GB after that and the school nurse determined that it wasn't from abuse and therefore didn't make a call and then on early October it said Dornquist noticed bruising on GB's forehead she took a photograph and called Murray and to look at the bruising so it looks I'm counting two times so you're saying that's just false but I'm counting two times what what Sherry Dornquist testified to was that she talked to miss Murray on two occasions one about hitting his head on a rail the other about the bilateral bruising that's what her testimony said I did I just hear you say she didn't talk to Murray twice she didn't talk to miss Murray twice about suspected abuse no well I'm having problems with how you're characterizing the facts in terms of I have those two those you know whatever you want to call that those two things happen that she talked to Murray and it didn't have to do with he was getting an F in her class it had to do with things on his body and on one occasion it was because he hit his head on a rail at school that was the point is she okay but it had to do with injuries on his body and what should she do about correct okay absolutely as it relates to your questions about policy for the school policy versus the district policy the school policy I will I submit is not contrary to the statute the mandatory reporting statute because the mandatory reporting statute allows someone to cause another person to make a CPS call however if we assume that the school's written policy is contrary to the CPS reporting statute that doesn't get the plaintiffs where they need to go because that's not it doesn't discourage the reporting in fact it says you must report to the counselor who then will make the phone call but a written policy does not protect the school if the actual policy in practice by the school personnel is different of course meaning could this I will hypothesize that the written policy of the school is fabulous there's no possible question of whether it's wrong but if the school administrators don't follow the policy we still have problems I agree with you I agree with you as it relates your overtime so if you'd sum up that would be great you bet even if we assume the that everything that has been alleged about Juanita Murray is true she was a gatekeeper she asked people to come to her she then made a decision whether to report it or not or work it out with the parents there is no evidence in this record that those facts occurred as it relates to GB there is no evidence that any teacher ever either went to Ms. Murray and said I'm concerned that GB is being abused and she didn't report it to would have gone I suspected abuse I would have gone but I I was discouraged not to and because of that you said teacher you want to say any person went any staff member yes and in the absence of those facts related to GB there isn't a state created danger okay thank both sides for their arguments Davis versus Riverside School District submitted and that concludes the the morning
judges: W. Fletcher, Callahan, Christen